847 So.2d 1144 (2003)
Joel H. SEIDMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-3842.
District Court of Appeal of Florida, Fourth District.
June 25, 2003.
*1145 Denise V. Powers of Denise V. Powers, P.A., Coral Gables, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for Appellee.
GROSS, J.
On August 22, 2002, appellant, Joel H. Seidman, entered an open plea as to six counts of dealing in stolen property, pursuant to section 812.019(1), Florida Statutes (2001).
The plea arose out of a fraudulent viatical settlement scheme. Seidman obtained six life insurance policies, totaling $550,000.00, by misrepresenting to insurance companies that he was completely healthy, when in fact he knew he was dying from AIDS. Once the two-year "contestable period" of the policies expired, Seidman sold all six policies through a viatical settlement broker, pocketing $329,810.00.
As the first district has explained:
In the typical viatical settlement, a terminally-ill policyholder, known as a viator, sells the right to receive the proceeds of his or her life insurance policy to an investor usually through a viatical settlement provider. The viator is paid an amount equal to the discounted value of the death benefits under the insurance policy, which funds are usually required to provide for the viator's medical and living expenses. The investor is responsible for the payment of the premiums under the policy. The investor obtains a return based upon the difference between the death benefits ultimately paid under the policy and the discounted amount paid to the viator, less the costs of any premiums and administrative fees paid by the investor. The viatical settlement company receives *1146 a fee or commission depending upon the structure of the transaction.
Accelerated Benefits Corp. v. Dep't of Ins., 813 So.2d 117, 118-19 (Fla. 1st DCA 2002).
At the plea conference, Seidman's counsel claimed that "[t]here's no victim here." He contended that because the insurance policies were in effect, the premiums were up to date, and payment would be made at "some point" upon Seidman's death, neither the insurance companies whose premiums were being paid nor the viatical companies who would receive payment upon Seidman's death were victims in the case.
The state argued there were potential victims. One insurance company had already successfully contested payment on the policies. If the insurance companies do not eventually pay out the coverage because of the fraudulent transactions, investors who purchased Seidman's rights under the policies will lose the amount of their investment. The state requested that a restitution order be entered against Seidman.
Before accepting the plea, the trial court made it clear to Seidman that restitution would be imposed if he accepted the plea and that he was not required to accept the plea. Seidman accepted the plea after a detailed colloquy.
The court sentenced Seidman to 20.25 months in prison as to all six counts, to be served concurrently, followed by ten years probation. The sentence was to run concurrently with his federal sentence.[1] The court ordered restitution as a condition of probation, with the victims "as yet to be determined." The court designated the Department of Insurance ("Department") as the agency to hold restitution monies for the victims. The court explained that it would give the state the term of probation to seek out the victims.
Seidman argues that the court's order "requiring restitution/disgorgement as a condition of probation is an illegal and improper sentence," because it fails to identify a victim and because the Department is not a proper "victim" under the restitution statute.
Section 775.089, Florida Statutes (2001), states in part:
(1)(a) In addition to any punishment, the court shall order the defendant to make restitution to the victim for:
1. Damage or loss caused directly or indirectly by the defendant's offense; and
2. Damage or loss related to the defendant's criminal episode,
unless it finds clear and compelling reasons not to order such restitution....
§ 775.089(1)(a)1.-2.
Seidman cites to cases that stand for the proposition that this state agency cannot be defined as a victim under this statute. Both Rodriguez v. State, 691 So.2d 568, 569-70 (Fla. 2d DCA 1997) and Knaus v. State, 638 So.2d 156 (Fla. 2d DCA 1994) hold that a sheriff's department does not meet the statutory definition of "victim." See also Staudt v. State, 616 So.2d 600 (Fla. 4th DCA 1993) (holding that police agency is not a "victim" under restitution statute, and therefore defendant could not be ordered to pay for investigative costs under statute).
However, in this case, the Department is only a conduit for directing restitution money to the ultimate victims, not the victim who is to be made whole by the restitution. Thus, the cases cited by Seidman are of no import here.
*1147 Nothing in the restitution statute prohibits the trial court from reserving jurisdiction to enter a specific restitution order until such time as the victims become identified. Just as the trial court can reserve jurisdiction when the amount of damages are not yet known, as a matter of public policy, there is no reason why a trial court cannot do so when the victims cannot be identified until some point in the future. Cf. L.O. v. State, 718 So.2d 155, 156-58 (Fla.1998) (stating that court recognizes that if trial court timely reserves jurisdiction as to the amount of restitution, it can set the amount at a later date).
AFFIRMED.
POLEN, C.J., and WARNER, J., concur.
NOTES
[1] Defense counsel indicated that appellant was presently serving a forty-one-month federal prison sentence for other life insurance fraudulent activity.